UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| ALLIANCE LAUNDRY SYSTEMS LLC,<br><br>       Plaintiff,<br><br>v.<br><br>EATON CORPORATION,<br><br>       Defendant. | Case No. 13-CV-687-JPS<br><br>ORDER |

In June of this year, plaintiff Alliance Laundry Systems ("Alliance") initiated this lawsuit against defendant Eaton Corporation ("Eaton"). (Docket #1). Alliance has since filed an amended complaint. (Docket #7). Presently before the court is Eaton's motion to dismiss Alliance's amended complaint. (Docket #10). The motion is fully briefed and ready for adjudication.

1. Background Facts

 1.1 Corporate Transactions

In 1979, McGraw-Edison Company ("McGraw-Edison") and Raytheon Company ("Raytheon") executed an Asset Purchase Agreement ("1979 Agreement") whereby McGraw-Edison sold its Laundry Products and Kitchen Appliance Divisions to Raytheon. (Am. Compl. ¶ 15). The 1979 Agreement provides that McGraw-Edison retains responsibility for "all liabilities with respect to any claim for damages on account of alleged or actual injury to person or property allegedly or actually resulting from the possession or use of any products manufactured or sold by the Divisions" "with respect to claims made for any such injury or loss occurring, or allegedly occurring through [October 31, 1979]." (Docket #7-2 ¶ 7.7). The 1979 Agreement further obligated McGraw-Edison to "maintain in full force and

effect, all of the insurance, as in effect on June 30, 1979, on the assets, property, and business of the Divisions, and for protection against any liabilities of or claims against the Divisions, through [October 31, 1979]." (Docket #7-2 ¶ 7.7). The 1979 Agreement also states that Raytheon does not assume any of the "liabilities and obligations for which McGraw-Edison or the Divisions for which McGraw-Edison is entitled to be reimbursed, indemnified, or otherwise protected, in whole or in part, by insurance underwritten by unrelated third party insurance carriers[.]" (Docket #7-2 ¶ 2.2(g)).

Several corporate transactions have occurred since the 1979 Agreement. First, in 1985, Cooper Industries plc ("Cooper")[1] purchased McGraw-Edison, thereby assuming McGraw-Edison's contractual rights and obligations to Raytheon. (Am. Compl. ¶ 15). In 1998, Alliance acquired Raytheon's commercial laundry business, thereby assuming Raytheon's contractual rights and obligations to Cooper. (Am. Compl. ¶ 16). Finally, sometime before May 21, 2012, Eaton acquired Cooper. (Am. Compl. ¶ 19). In a November 30, 2012 statement, Eaton stated that the transaction, announced on May 21, 2012, "combines Eaton and Cooper into a new, premier global power management company named Eaton Corporation plc." (Am. Compl. ¶ 19).

---

[1] The parties acknowledge the existence of tens of Cooper-named subsidiaries under Eaton. *See e.g.* Eaton Corporation plc 2012 Annual Report on Form 10-K (Docket #12-4). Throughout this order the court refers to the entities as the parties do, with the understanding that references to "Cooper" may be imprecise at this early stage in the proceedings.

Page 2 of 13

Case 2:13-cv-00687-JPS   Filed 10/21/13   Page 2 of 13   Document 16

### 1.2 The Florida State Court Action

In August 2012, Julius D. Sanders ("Sanders") and his spouse filed a Third Amended Complaint against Alliance, as a successor in interest to Speed Queen, and fifteen other defendants. (Docket #7-1). In the complaint, it is alleged that Sanders repaired commercial washers and dryers from the 1950s through sometime in the 1980s, and that he contracted mesothelioma as a result of exposure to asbestos from a variety of products he came into contact with, including, allegedly, commercial dryers manufactured by Speed Queen.

On November 14, 2012, Alliance, through its Vice President, Chief Legal Officer, and Secretary, Scott L. Spiller ("Spiller"), demanded in writing that Cooper assume all defense and indemnification obligations relating to the Florida State Court Action. (Docket #7-1). On January 29, 2013, Cooper, through Senior Counsel Mindy Harper ("Harper"), agreed "to assume the defense and pay the indemnity (if any) only with respect to allegations of exposure through October 31, 1979...." (Docket #7-4). Cooper engaged the law firm of Fowler White Burnett, PA ("Fowler White") to defend against those claims. (Am. Compl. ¶ 24). The Florida State Court Action was scheduled for a three-week jury trial commencing on June 13, 2013. (Am. Compl. ¶ 24).

On June 11, 2013, Harper sent Spiller a letter regarding the Florida State Court Action, stating that "[a]fter additional review and investigation, [Cooper] denies your request to defend and indemnify [Alliance] in this matter." (Docket #7-5). The reason given is that Alliance is not a named party to the 1979 Agreement and Cooper did not consent to assignment, as the 1979 Agreement requires. The letter states, "Cooper therefore will not continue

Page 3 of 13

Case 2:13-cv-00687-JPS   Filed 10/21/13   Page 3 of 13   Document 16

defending Alliance in this matter, and its counsel will withdraw immediately." The letter is written on Eaton letterhead.

Spiller responded by letter on June 12, 2013, stating "Alliance hereby rejects Cooper Industries' attempted revocation of the tender acceptance, agreement to defend and indemnify Alliance and all statements contained in your June 11, 2013 letter." (Docket #7-6). By e-mail June 12, 2013, Alliance's outside counsel was informed by Jennifer L. Green of DeHay & Elliston, LLP[2] that Cooper determined it has no obligation with respect to the Florida State Court Action, and that "Alliance should take whatever steps it believes it should take to defend this case." (Docket #7-7).

On June 13, 2013, jury selection began with Alliance (represented by Fowler White) and one other defendant remaining in the case. (Am. Compl. ¶ 37). Opening statements commenced June 17, 2013, and that afternoon the other remaining defendant settled. (Am. Compl. ¶ 37). Alliance, through separate counsel, began direct settlement negotiations with the Sanders' counsel; on June 21, 2013, a settlement was reached. (Am. Compl. ¶ 37).

1.3     Federal Litigation

Alliance filed its first complaint in this matter on June 16, 2013. (Docket #1). Eaton moved to dismiss, alleging a failure to plead facts establishing diversity jurisdiction.[3] (Docket #5). Alliance filed its amended complaint on July 26, 2013. (Docket #7). Eaton moved to dismiss the amended complaint, which motion is currently before the court. (Docket #10).

---

[2]The Amended Complaint refers to Ms. Green as "Eaton's and/or Cooper's counsel."

[3]This motion will be denied as moot, as it seeks dismissal of the original complaint which has been superceded by the amended complaint.

Eaton's motion proceeds as follows: first, Eaton maintains that the complaint fails to state a claim because it fails to plead actions by Eaton. The crux of Eaton's argument is that the proper defendant to this action is Cooper, Eaton's wholly-owned subsidiary. Second, Eaton argues that it is entitled to dismissal of each count of the complaint as a matter of law.

2.   Legal Standards

Eaton brings this motion to dismiss under Federal Civil Rule of Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint by asserting that the plaintiff failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), Alliance's complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

3.   Analysis

   3.1   Eaton As Defendant

Eaton's first argument in support of dismissal is that Alliance's amended complaint fails to state a claim because Eaton is neither a party to the 1979 Agreement, nor a successor-in-interest to McGraw-Edison, the contracting party. (Brief in Support at 9). Eaton further argues that none of the conduct of which Alliance complains is Eaton's; rather, Eaton argues, the proper defendant is Cooper, Eaton's wholly-owned subsidiary. (Brief in Support at 9-10). In response, Alliance maintains that the allegations in

the amended complaint are sufficient to satisfy notice pleading requirements. (Response Brief at 9). More specifically, Alliance hangs its hat on two allegations: first, the allegation that Eaton assumed Cooper's and McGraw-Edison's obligations under the 1979 Agreement as a result of the announced merger; and, second, the fact that the June 11, 2012 letter denying indemnification was sent on Eaton letterhead. (Response Brief at 12).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, the "misconduct" Alliance alleges is the refusal to defend and indemnify Alliance in the Florida State Court Action. The court concludes that, at this early stage in the litigation, Alliance's claim that Eaton is responsible for this alleged misconduct is "plausible on its face." Alliance has shown that the communication declining to defend Alliance was written on Eaton letterhead, indicating that Eaton may be responsible for that action. Further, Alliance's claims that Eaton assumed obligations under the 1979 Agreement are plausible, given that the communication discussing the obligations under the 1979 Agreement appears on Eaton letterhead, and given the press release that Eaton's acquisition of Cooper "combines Eaton and Cooper into a new, premier global power management company named Eaton Corporation plc." (Docket #7-3). Obviously, this press release is not written with legal precision, but without the benefit of discovery, Alliance's

assertion that the companies had merged and that Eaton assumed responsibilities of the 1979 Agreement are plausible.

Ultimate liability may not, in the end, fall on Eaton. And Eaton's corporate structure will, of course, be given its due in the adjudication of this litigation on the merits. But the question of which Eaton corporate entity is the true successor to the 1979 Agreement and the question of the adequacy of Alliance's pleading are different inquiries. Moving forward, the parties are encouraged to communicate and cooperate in identifying the parties to the relevant corporate transactions, and the court is confident that, if the defendant to this case must be edited following further discovery, the Federal Rules of Civil Procedure provide adequate avenues to make any necessary changes.

### 3.2 Failure to State a Claim as a Matter of Law

#### 3.2.1 Count I: Breach of Contract

The court turns now to the portion of Eaton's motion to dismiss addressing each count of Alliance's complaint. Eaton first argues that the 1979 Agreement does not impose a duty to defend or indemnify; in Eaton's view, the 1979 Agreement merely reflects a division of responsibilities for potential liability. Brief in Support at 14. Alliance maintains that the parties intended the invoked section of the 1979 Agreement to ensure indemnification, citing the section's language and the requirement that McGraw-Edison maintain insurance. Response at 15-17.

Eaton also argues that the parties' letters regarding defense of the Florida State Court Action did not create a contract. Brief in Support at 15. Eaton maintains that the parties' communications did not evince mirror-image terms, as is required in contract formation. Brief in Support at 16.

Eaton further argues that Alliance's argument is inconsistent because Alliance argues that a duty to defend existed from the 1979 Agreement, and therefore there could be no consideration for any contract based upon the parties' exchange of letters in 2013. Brief in Support at 17-18. Alliance responds that its claims are sufficient to withstand a 12(b)(6) motion. Response at 18. Alliance acknowledges that the facts may eventually show that the January 2013 letter may legally constitute a counter-offer instead of an acceptance; but either way, Alliance maintains that its allegations "raise a right to relief above the speculative level," and are, therefore, adequate at this stage in the proceedings. Response at 19 (*quoting Twombly*, 550 U.S. at 555).

The court concludes that Count I of Alliance's complaint is sufficient to defeat a 12(b)(6) motion. The parties agree that Delaware law governs the substance of the breach of contract claim under the 1979 Agreement, due to the 1979 Agreement's choice of law provision. (Brief in Support at 8 n.5; Response at 14). The elements of a breach of contract claim under Delaware law are: "the existence of a contract, the breach of an obligation imposed by that contract, and the resultant damage." *VLIW Tech., LLC v. Hewlitt-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).The parties' briefing focuses primarily on the first element: the existence of a contract. Construing all pleaded facts in Alliance's favor, it is at least plausible that a contractual obligation to defend existed. The 1979 Agreement provides that McGraw-Edison is responsible for certain liabilities, and requires McGraw-Edison to maintain insurance for protection against claims upon those liabilities; it is at least plausible to read those two provisions as evincing intent that McGraw-Edison (and successors)

must indemnify Raytheon (and successors) against claims relating to those liabilities.

Alternatively, if further factual development disproves this reading of the 1979 Agreement, it remains plausible that the parties' communication regarding defense of the Florida State Court Action constituted a contract for Alliance's defense. Eaton's argument that this theory is inconsistent with Alliance's theory of liability under the 1979 Agreement does not warrant dismissal; parties may plead alternative theories of liability. *See* Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses."). Eaton's second argument regarding the mirror-image rule is similarly unsuccessful; as Alliance argues, Eaton's January 2013 letter may be construed as a counter-offer which was, in turn, accepted by Alliance. The facts alleged in the complaint, construed in Alliance's favor, show that it is plausible that the parties negotiated regarding the scope of the defense and then conducted themselves as if they had an agreement for Alliance's defense, at least until two days before trial was to start. Alliance has pleaded sufficient facts to show that relief is plausible under this theory.

Whether the facts ultimately show that the 1979 Agreement bound Eaton to defend Alliance, or that the parties formed a contract in their exchange of letters about the defense, or neither, Alliance has pleaded the existence of a contract, that Eaton had an obligation to defend, and that Eaton injured Alliance when it failed to satisfy its obligation. Alliance's allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and the court will not dismiss Count I at this early juncture.

### 3.2.2 Count II: Breach of the Implied Duty of Good Faith and Fair Dealing

Eaton next contends that Count II fails because a plaintiff cannot claim breach of an implied contractual provision where an express contractual provision addresses the issue. Brief in Support at 18. Alliance responds that "there is no contractual provision in either agreement at issue expressly addressing the issue of Eaton's obligations to act in good faith in connection with its obligation to defend and indemnify Alliance." Response at 20.

With Alliance's response, it appears to the court that Count II is founded on Alliance's allegations of breach of the obligation to defend and indemnify. There is some dispute regarding the choice of law that should apply to this count, but the court concludes dismissal is warranted under either, or both Wisconsin and Delaware law. Under Wisconsin law an implied covenant "does not support an independent cause of action for failure to act in good faith under a contract," *Hauer v. Union State Bank of Wautoma*, 532 N.W.2d 456, 464 (Wis. Ct. App. 1995), and under Delaware law "the implied covenant of good faith and fair dealing is recognized only where a contract is silent to the issue in dispute." *Boulden v. Albiorix, Inc.*, C.A. No. 7051-VCN, 2013 WL 396254 (De. Ch. Jan. 31, 2013). As Alliance's response states, Count II is founded on Eaton's alleged acts of bad faith "in connection with its obligation to defend and indemnify Alliance." The court concludes that this count is derivative of the allegations of breach in Count I, and thus an independent cause of action does not lie.

Both parties cite the *Boulden* case, and it warrants brief discussion. In his complaint in that case, plaintiff Boulden brought claims for breach of contract and for breach of the covenant of good faith and fair dealing, among

Page 10 of 13

Case 2:13-cv-00687-JPS   Filed 10/21/13   Page 10 of 13   Document 16

other claims. *Id.* at *1. As part of their motion to dismiss, defendants argued that the implied covenant claim should be dismissed as duplicative of the breach claim; Boulden responded that the implied covenant claim is based upon the defendants' unreasonable conduct after the formation of their contract. *Id.* at *14-15. The court dismissed the implied covenant claim, reasoning that Boulden had not made any specific allegations showing defendants' conduct to be unreasonable; the allegations he made to support the implied covenant claim failed "to distinguish Boulden's breach of contract claim from his implied covenant claim because the breach is the same." *Id.* at *15. The court explained, "there is no legal difference between breaches of contract made in bad faith and breaches of contract not made in bad faith. Both are simply breaches of the express terms of the contract." *Id.* (citation omitted). Similarly here, the facts asserted in Alliance's complaint in support of Claim II are the same facts Alliance asserts to constitute breach of contract in Claim I: that Eaton reneged on its defense and indemnity obligations less than two days before trial, withdrew settlement authority from counsel, and refused to supervise the Florida State Court Action. Alliance's claim of breach of the implied duty of good faith and fair dealing thus appears to be premised on Eaton's breach of contract; Claim II will be dismissed, and any relief available to Alliance will be had under Claim I.

### 3.2.3 Count III: Promissory Estoppel

Eaton next contends that the promissory estoppel claim fails as a matter of law due to a pleading error: Alliance incorporated facts asserting the existence of an express contract into this count, and the existence of a contract precludes a claim for promissory estoppel. Brief in Support at 18. Alliance responds that pleading in the alternative is permitted, and that the

promissory estoppel claim is particularly appropriate here, where Eaton may contest the existence and validity of the pleaded contract. Response at 22-23. Alliance further argues the court should not dismiss the claim due to its incorporation of facts asserting the express contracts because such a dismissal would be without prejudice to re-filing, and Alliance would simply file an amended complaint stating a claim for promissory estoppel without incorporating those facts. Response at 22-23.

The court will not dismiss Alliance's claim for promissory estoppel at this time, for two reasons. First, it is true that dismissal at this juncture would merely result in a re-do, as Alliance could simply file another amended complaint omitting the incorporation of facts asserting the existence of an express contract. The court is eager to assist the parties in an expeditious resolution of their conflict, and sees dismissal followed by inevitable re-filing as an unnecessary obstacle to that resolution. Second, in contrast to the case cited by both parties, *Harley Marine Services, Inc. v. Manitowoc Marine Group, LLC*, here the existence of a contract is very much in dispute. In that case, my colleague Chief Judge William Griesbach dismissed plaintiffs' claims for equitable relief because the parties did not dispute the existence or validity of the underlying contract, so relief would be had under the contract. 759 F.Supp.2d 1059, 1063 (E.D. Wis. 2010) Here, the facts may show that no contract exists under either of Alliance's theories under Claim I; in that case, Alliance's claim for equitable relief will become its principal claim for relief. Given the prospective validity of the claim, and the fact that dismissal would just yield re-filing to cure the pleading mistake, the court will not dismiss Alliance's promissory estoppel claim.

### 3.2.4 Count IV: Declaratory Judgment

Finally, Eaton argues that Count IV, seeking a declaratory judgment, must fail because it is derivative of Counts I-III. Brief in Support at 19. Because the court will not dismiss Counts I and III, the premise to Eaton's argument is invalid, and the court will permit Count IV to proceed.

Accordingly,

IT IS ORDERED that Eaton's motion to dismiss (Docket #5) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that Eaton's motion to dismiss (Docket #10) be and the same is hereby GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that Claim II from Alliance's amended complaint (Docket #7) be and the same is hereby DISMISSED.

Dated at Milwaukee, Wisconsin, this 21st day of October 21, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge